# 97 DTA 192

## TRIBUNAL DE CIRCUITO DE APELACIONES
## CIRCUITO REGIONAL VI DE CAGUAS/HUMACAO/GUAYAMA
## PANEL I

MEDICAL BIOTRONICS INC.
Demandante-Recurrida

v.

FELIX APONTE ALVARADO, DILSIA OSORIO DE APONTE, SOCIEDAD LEGAL DE GANANCIALES COMPUESTA POR AMBOS; APONTE MEDICAL TECHNOLOGIES, INC. Y OTROS
Demandados-Peticionarios

Núm. KLCE-97-00729

San Juan, Puerto Rico, a 11 de septiembre de 1997

Panel integrado por su Presidente, Juez señor Brau Ramírez
y los Jueces señor Colón Birriel y señora Pesante Martínez

Pesante Martínez, Juez Ponente

## TEXTO COMPLETO DE LA RESOLUCION

### I

El 30 de junio de 1994 la demandante-apelada Medical Biotronics Inc., una corporación dedicada a la venta y servicios de materiales y equipo de salud compró a dos de sus accionistas, los demandados Félix Aponte Alvarado y su esposa, Dilsia Osorio de Aponte, un total de 250 acciones de capital. Entre las condiciones que las partes acordaron había una cláusula de no competencia por un período de seis años a contarse desde que las partes otorgaran el contrato.

A las dos semanas de suscribirse el Acuerdo de Redención de Acciones, los demandados organizaron una corporación llamada Aponte Medical Technologies, Inc., la cual ofrecía unos servicios similares a los de Medical Biotronics, Inc. Al demandante advenir en conocimiento les exigió a los demandados que cumplieran con la cláusula de no competencia y les apercibió que de no cesar su conducta presentarían una acción en su contra.

Así las cosas los demandados alegadamente vendieron sus acciones por la suma total de $200,000 a sus tres hijos los co-demandados Debra, Julie y Steven Aponte Osorio junto con el Sr. Iván Viera San Martin y su esposa Jhanirca Morales. Los co-demandados admitieron que no han hecho ningún pago ni que se les ha requerido el mismo. Tampoco contaban con evidencia de que el certificado de acciones que se emitió a favor de los demandados hubiese sido cancelado. Después del descubrimiento de prueba se presentó la cancelación del certificado de acciones.

Además, la demandante alegó que durante el mes de abril de 1995 es decir, un mes después de la alegada transacción los demandados comparecieron en capacidad de oficial de la corporación ante un notario para suscribir la planilla de corporaciones, a pesar de haber cesado su participación en la misma. También alegó que el Sr. Félix Aponte admitió haberse presentado, después del 17 de marzo de 1996, como Presidente de Aponte Medical Technologies y que a esta fecha el Sr. Félix Aponte era el agente residente de la corporación co-demandada.

Ante este marco fáctico la demandante adujo que los demandados le hicieron un venta simulada a los co-demandados para poder violar la cláusula de no competencia y solicitó se extendiera dicha restricción a Aponte Medical Technologies Inc. En respuesta, los co-demandados presentaron una moción de sentencia sumaria en la cual solicitaron la desestimación del pleito alegando que la cláusula de no competencia es nula; que el contrato de redención de acciones fue entre Medical Biotronics, Inc. y Félix Aponte Alvarado y su esposa Dilsia Osorio de Aponte, por lo que a ellos no se les puede extender dicha restricción. Expusieron además, que ellos no son legalmente responsables por los daños que puedan surgir de la violación de un acuerdo donde no fueron parte y que no era necesario descorrer el velo corporativo. Lo anterior por razón de que el alegado accionista principal de Aponte Medical Technologies, Inc. forma parte en este pleito en su carácter personal y sus bienes personales están sujetos a responder por los daños ocasionados y ello hace innecesario incluir a los

co-demandados en el pleito.

A su vez, la demandante se opuso a la solicitud de sentencia sumaria arguyendo que el contrato de venta de acciones de Aponte Medical Technologies Inc. fue uno simulado por lo que no hubo causa y esto unido entre otras al hecho de que no había pasado más de dos semanas desde el acuerdo de no competencia, son pruebas de la actitud de engaño para con un tercero como lo es la demandante. Además de probarse que la venta de acciones fue una venta simulada los derechos de los co-demandados se verían afectados y les serían responsables solidariamente a la demandante por los daños causados. El Tribunal de Primera Instancia evaluó los planteamientos de las partes y declaró *"No ha Lugar"* la moción de sentencia sumaria presentada por los co-demandados en la cual procuraban la desestimación de la demanda. Denegamos la expedición del auto de *certiorari*.

## II

En Puerto Rico los contratos se rigen por lo dispuesto en el Código Civil de Puerto Rico. El Artículo 1210 de nuestro Código Civil, 31 L.P.R.A. sec. 3375, dispone que los contratos se perfeccionan por *"el mero consentimiento y desde ese momento cada una de las partes viene obligada no sólo a cumplir con lo expresamente pactado, sino también con las consecuencias que según su naturaleza, sean conformes a la buena fe, al uso y a la ley (citas omitidas)"*. *Unysis Puerto Rico Inc. v. Ramallo Brothers Printing Inc.,* op. 28 de junio de 1991, ___ D.P.R. ___ (1991), **91 J.T.S. 69**, pág. 8853. *"Cuando en un contrato bilateral uno de los contratantes no cumple con lo que se obligó, el otro tiene el derecho de escoger entre exigir el cumplimiento o la resolución de la obligación con el resarcimiento de daños y abono de intereses en ambos casos"*. *Ibid,* pág. 8854. De igual manera un tercero que interfiera torticeramente en la relación contractual entre dos contratantes, responderá por los daños y perjuicios ocasionados. *General Office v. A.M. Capen's,* 115 D.P.R. 553 (1984).

Los co-demandados alegan que a tenor con lo resuelto en *Arthur Young v. Virgilio Vega III,* op. de 24 de mayo de 1994, ___ D.P.R.___ (1994), **94 J.T.S. 75**, las cláusulas de no competencia que exceden el término de un año son nulas y la misma no puede hacerse extensiva a personas que no formaron parte en dicho contrato. En relación a la nulidad de la cláusula de no competencia este Panel dispuso en el recurso instado por los demandados de epígrafe, que la parte demandante tenía derecho a ventilar en un juicio plenario si la norma contenida en *Arthur Young v. Virgilio Vega III,* aplica a la venta de una participación de un negocio o se limita al acuerdo contractual entre el empleado y su patrono. Los co-demandados intentan presentar nuevamente la misma controversia.

Ahora bien, si en su día el Tribunal de Instancia determina que la cláusula de no competencia es válida y resuelve que los co-demandados otorgaron un venta simulada para burlar la restricción aludida éstos tendrán que responder solidariamente por los daños ocasionados a los demandantes. Es por ello que consideramos que en estos momentos los co-demandados son una parte indispensable en el pleito.

La Regla 16.1 de las Reglas de Procedimiento Civil, 32 L.P.R.A. Ap. III, Regla 16.1, reza como sigue:

*"Las partes que tuvieren un interés común sin cuya presencia no pueda adjudicarse la controversia se harán partes y se acumularán como demandantes o demandados según corresponda. Cuando una persona que deba unirse como demandante rehusare hacerlo, podrá unirse como demandada".*

Entendemos por parte indispensable aquella persona *"que podría ver afectados sus derechos e intereses al momento de dictarse sentencia o resolución por no encontrarse presente en el litigio".* *Rodríguez Rodríguez v. Moreno Rodríguez,* op. de 5 de abril de 1994, ___ D.P.R.___ (1994), **94 J.T.S. 43**, pág. 11737. Ello significa, que el propósito principal de la Regla que antecede es el de *"proteger a las personas ausentes de los efectos perjudiciales que pudiera tener la resolución de un caso sin la presencia de ellos y evitar la multiplicidad de pleitos mediante un remedio efectivo y completo."* *Unysis Puerto Rico Inc. v. Ramallo Brothers Printing Inc.,* supra, pág. 8856 citando a *Hernández Agosto v. Romero Barceló,* 112 D.P.R. 407, 412-413 (1982).

De otra parte, la Regla 36.3 de las Reglas de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 36.3,

establece que se podrá dictar sentencia sumaria *"si las alegaciones [deposiciones], contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas, si las hubiere, demostrasen que no hay controversia real sustancial en cuanto a ningún hecho material y que como cuestión de derecho debe dictarse sentencia sumaria...Dicha sentencia podrá dictarse a favor o en contra de cualquier parte en el pleito."* Esto quiere decir, que para que un tribunal pueda dictar una sentencia sumaria no puede existir controversia sobre algún hecho material del litigio. *Caquías Mendoza v. Asoc. de Residentes de Mansiones de Río Piedras*, Op. de 25 de agosto de 1993, ___ D.P.R. ___ (1993), **93 J.T.S. 127**, pág. 11080.

Reiteradamente hemos señalado, que la Regla 36 tiene como propósito principal el aligerar la tramitación de los casos que no necesitan la celebración de un juicio en su fondo porque de los documentos no controvertidos surge que no existe una controversia de hechos materiales de forma tal que sólo resta aplicar el derecho. *PFZ Properties, Inc. v. General Accident Insurance Company P.R. Ltd.*, op. de 7 de septiembre de 1994, ___D.P.R. ___ (1994), **94 J.T.S. 116**, pág. 125. *"Utilizado correctamente, la misma contribuye a descongestionar los calendarios judiciales (citas omitidas)"*. *Pilot Life Insurance Company v. Crespo Martínez,* op. de 13 de julio de 1994, ___ D.P.R. ___ (1994), **94 J.T.S. 104**, pág. 21.

Para derrotar una moción de sentencia sumaria la parte promovida tiene que demostrar que hay una controversia real sustancial en cuanto los hechos materiales del caso y debe presentar declaraciones juradas y documentos que controviertan los hechos presentados por el promovente. *PFZ Properties, Inc. v. General Accident Insurance Company, P.R. Ltd., supra; Pilot Life Insurance Company v. Crespo Martínez, supra.*

No obstante, cabe señalar que nuestro acervo jurisprudencial ha sido claro en sus expresiones de que *"no es aconsejable utilizar el mecanismo procesal de sentencia sumaria en casos donde hay elementos subjetivos de intención, propósitos mentales o negligencia o cuando el factor credibilidad sea esencial".* *Soto v. Caribe Hilton,* op. de 17 de octubre de 1994, ___ D.P.R.___ (1994), **94 J.T.S. 128,** pág. 312.

Un análisis de los documentos obrantes en autos revela que existe controversia de hechos en torno a si los co-demandados hicieron una venta simulada con los demandados con el propósito de burlar la cláusula de no competencia. Surgió del descubrimiento de prueba que los demandados le vendieron a los co-demandados sus acciones en Aponte Medical Technologies Inc. por la suma total de 200,000 dólares. Dicha suma se pagaría en plazos mensuales a partir de abril de 1995. Sin embargo los co-demandados aceptaron que no han hecho ningún pago y que los demandados tampoco les han requerido los pagos adeudados.

Además, el Sr. Félix Aponte admitió que representó a Aponte Medical Technologies, Inc., en calidad de Presidente tanto en Puerto Rico como en el exterior después del 17 de marzo de 1996. En dicha fecha el Sr. Félix Aponte aparece como agente residente de Aponte Medical Technologies Inc.

En esta etapa de los procedimientos el Tribunal de Instancia no tiene un cuadro claro de cuál fue la intención de los co-demandados al comprarle las acciones a los demandados y si la compraventa de las acciones fue o no simulada. Sin la presencia de los co-demandados sería difícil llegar a la verdad. Además, de resolverse en su día que la venta de las acciones fue una simulada con la intención de engañar a la demandante, éstos les serían responsables solidariamente a la demandante por los daños y perjuicios sufridos. Siendo ello así, deben permanecer los co-demandados en el pleito. Resolvemos que el Tribunal de Primera Instancia, Sala Superior de Caguas, no abusó de su discreción al denegar la solicitud de sentencia sumaria. Denegamos la expedición del auto de *certiorari* solicitado.

Lo acordó el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General